IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |  |
|---|---|---|
| **CITY OF BIRMINGHAM,** | ] | |
| | ] | |
| **Plaintiff,** | ] | |
| | ] | |
| v. | ] | |
| | ] | |
| **CITIGROUP INC.; CITI** | ] | |
| **MORTGAGE, INC.; CITI** | ] | |
| **FINANCIAL, INC.; ARGENT** | ] | **CV-09-BE-467-S** |
| **MORTGAGE COMPANY, LLC;** | ] | |
| **COUNTRYWIDE MORGAGE** | ] | |
| **VENTURES, LLC; COUNTRYWIDE** | ] | |
| **KB HOME LOANS; COUNTRYWIDE** | ] | |
| **FINANCIAL CORPORATION;** | ] | |
| **FICTITIOUS DEFENDANT NUMBER** | ] | |
| **ONE,** | ] | |
| | ] | |
| **Defendants.** | ] | |

**MEMORANDUM OPINION**

This case comes before the court on the "Defendants' Motion to Dismiss" (doc. 8). The parties have fully briefed the motion, and the court has reviewed the filings and the applicable law. The City of Birmingham brought this suit alleging that the Defendants' lending practices constituted "reverse redlining" and caused, *inter alia*, foreclosures on homes in Birmingham, decreased property values, decreased tax receipts, and increased crime. The Defendants – Argent Mortgage Company, LLC; Countrywide Mortgage Ventures, LLC; Countrywide KB Home Loans; Countrywide Financial Corporation; Citigroup, Inc.; CitiFinancial, Inc.; and CitiMortgage, Inc. – are financial institutions that the City alleges are in the business of providing mortgage loans in the City of Birmingham. For the reasons stated below, the court will

GRANT the Defendants' motion (doc. 8), because of the City's lack of standing. Accordingly, the court will DISMISS the City's Complaint WITHOUT PREJUDICE.

The court will also *sua sponte* STRIKE pages 31-48 of the City's brief (doc. 14) in opposition to the Defendants' motion to dismiss, because those additional pages exceed the page limit without leave of the court.[1] Appendix II to the court's Uniform Initial Order (doc. 2) set out the page limits for responsive briefs: "response briefs are limited to thirty pages." (doc. 2 at 14).

The court will enter a separate order to that effect simultaneously.

## FACTS

The City of Birmingham brought these claims against the Defendants for alleged violations of the Fair Housing Act (FHA). The City also alleges state law claims of negligence, wantonness, misrepresentation, and outrage. Specifically, the City alleges that the Defendants engaged in an illegal practice known as "reverse redlining." The City alleges that the Defendants targeted the City's minority borrowers and marketed subprime mortgage loans to those borrowers in violation of the FHA.

*Procedural History*

The City of Birmingham filed a complaint in a proceeding, CV-2008-903691, in the Circuit Court of Jefferson County on November 17, 2008 (State Action I). In addition to its state law claims, the City expressly made claims under the FHA in State Action I. As such, the defendants to State Action I removed the case to the Northern District of Alabama. Judge Inge Johnson *sua sponte* remanded the case to the Circuit Court of Jefferson County on December 18,

---

[1] Because the court does not reach the question whether the City failed to state a claim, the striking of these pages, which discuss the City's argument that it has adequately stated claims upon which relief can be granted, does not prejudice the City.

2008. Judge Johnson found that the City was not an "aggrieved person" entitled to sue under the FHA, and, thus, that the City had "no possibility of stating a valid claim under that statute." As such, Judge Johnson concluded that federal jurisdiction was wholly lacking in State Action I. On remand, the City voluntarily dismissed without prejudice all the claims it asserted in State Action I on December 29, 2008.

The City filed another complaint, CV-2009-900406, in the Circuit Court of Jefferson County on February 5, 2009 (State Action II). The substantive allegations in State Action II are the same as the allegations contained in State Action I. The City restates its FHA claim and the state law claims. The only differences between the two cases are the Defendants. Unlike State Action I, none of the Defendants in State Action II is a citizen of Alabama. Accordingly, the Defendants removed State Action II based on both diversity and federal question jurisdiction. The removed State Action II is before the court now on the Defendants' motion to dismiss.

*Defendants' Motion to Dismiss*

In their joint motion to dismiss, the Defendants assert that the City lacks standing to pursue this action, that the City has failed to state a claim under the FHA, and that the City has failed to state a claim based upon Alabama state law.

**LEGAL STANDARD**

"Because standing is jurisdictional, a dismissal for lack of standing has the same effect as a dismissal for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1)." *Cone Corp. v. Fla. Dep't of Transp.*, 921 F.2d 1190, 1203 n.42 (11th Cir. 1991). "A defendant can move to dismiss a complaint under Rule 12(b)(1) for lack of subject matter jurisdiction by either facial or factual attack." *Stalley v. Orlando Ref'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir.

2008). "A facial attack on the complaint requires the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in [the] complaint are taken as true for the purposes of the motion." *McElmurray v. Consol. Gov't of Augusta-Richmond County*, 501 F.3d 1244, 1251 (11th Cir. 2007). "By contrast, a factual attack on a complaint challenges the existence of subject matter jurisdiction using material extrinsic from the pleadings, such as affidavits or testimony." *Id.*

A Rule 12(b)(6) motion to dismiss attacks the legal sufficiency of the complaint. Generally, the Federal Rules of Civil Procedure require only that the complaint provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (quoting Fed. R. Civ. P. 8(a)).  A plaintiff must provide the grounds of his entitlement, but Rule 8 generally does not require "detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley*, 355 U.S. at 47).  "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 127 S. Ct. at 1969.  "[S]tating such a claim requires a complaint with enough factual matter (taken as true) to suggest" the required elements.  *Id.* at 1965

In evaluating a motion to dismiss, the court assumes that all factual allegations set forth in the complaint are true, *United States v. Gaubert*, 499 U.S. 315, 327 (1991), and construes all factual allegations in the light most favorable to the plaintiff. *Brower v. County of Inyo*, 489 U.S. 593, 598 (1989). In other words, "[o]n a motion to dismiss, the facts stated in the . . . complaint and all reasonable inferences therefrom are taken as true." *Bickley v. Caremark RX, Inc.*, 461 F.3d 1325, 1328 (11th Cir. 2006) (citing *Stephens v. Dep't of Health & Human Servs.*, 901 F.2d

1571, 1573 (11th Cir. 1990)).  Nevertheless, on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

## DISCUSSION

*I.     Standing*

The Defendants first assert that the City's complaint is due to be dismissed for lack of subject matter jurisdiction, because the City lacks standing. To establish standing under Article III of the U.S. Constitution, a plaintiff must show (1) "an injury in fact," (2) "a causal connection between the injury and the conduct complained of," and (3) that "it [is] likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal quotation marks and citations omitted). The injury in fact must be "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Id.* at 560 (internal quotation marks and citations omitted). Also, the causal connection must be "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Id.* (internal quotation marks, citations, and alterations omitted).

*A.     Injury in Fact*

The Defendants argue that the City has failed to allege any "injury in fact." The City alleges that it has suffered, *inter alia*, the following "injuries in fact": reduced property values, reduced property tax revenues, increased spending on police and fire protection, and increased spending to secure foreclosed homes that are abandoned. The court finds that, assuming the factual allegations in the complaint are true, the City's alleged financial injuries constitute

"injuries in fact" for the purpose of determining standing. *See Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91, 110-11 (1979) (finding that falling home prices, if caused by the defendants' racially imbalanced sales practices, would give the plaintiff community standing to challenge the legality of those practices).

    B.    *Causation*

The Defendants argue that the City has failed to assert that any of its alleged injuries were caused by the Defendants. To establish standing, the causal connection must be "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560 (internal quotation marks, citations, and alterations omitted). "The line of causation between the [alleged] illegal conduct and injury" must not be "too attenuated." *Allen v. Wright*, 468 U.S. 737, 752 (1984). What constitutes a "fairly traceable" causal connection that is not "too attenuated" amounts to something like a moving target that must be plotted on a case-by-case basis. As such, comparison of this case to previously decided, factually similar cases is instructive.

The most factually analogous case the parties presented, and the court found none more on-point, is *Tingley v. Beazer Homes Corp.*, No. 3:07-CV-176, 2008 WL 1902108 (W.D.N.C. Apr. 25, 2008). The plaintiffs in *Tingley*, a group of homeowners, asserted that the defendant real estate agents purposefully sought out low-income persons for home loans and encouraged the low-income persons to change or falsify information on loan applications that allegedly resulted in foreclosures on those persons' houses that diminished the value of the plaintiffs' homes in the area. *Id.* at *4. The court determined that to make the necessary causal connection between the diminished property values asserted and the alleged illegal activities of the defendants, the court

would have to draw a series of speculative inferences. *Id.* The court stated that "[a]lthough the Plaintiffs allege that the Defendants defrauded third party home buyers and mortgage assignees, it does not necessarily follow from this allegation that these third party home buyers subsequently defaulted on their mortgages due to the Defendants' conduct rather than those buyers having failed to make their mortgage payments as a result of other factors, such as unemployment, health problems, a general weakening in the economy, or other financial conditions." *Id.*

Additionally, the *Tingley* court noted that on top of the third-party low-income persons' failures to make mortgage payments, "there is the issue of the intervening decisions by the mortgage assignees to foreclose the defaulted mortgages rather than to restructure the loans, which may have been done for reasons totally apart from the alleged fraud." *Id.* "Further," the court noted, "it is quite speculative that the depreciation in value of the Plaintiffs' property was caused by the foreclosures of these third party properties rather than as a result of a myriad of other factors, such as rising unemployment in the region, changes in the housing market, or other economic conditions." *Id.* The *Tingley* court ultimately determined that the "tenuousness of the connection between the Defendants' alleged actions and the alleged diminished value in the Plaintiffs' property becomes greater with each additional link in the chain." *Id.* The court, therefore, determined that the Plaintiffs did not have standing. *Id.* at *5.

Similarly, the City here asserts that the Defendants engaged in the unlawful practice of "reverse redlining." Specifically, the City alleges that the Defendants targeted minority borrowers who otherwise would have qualified for prime mortgages, and instead encouraged them to obtain subprime mortgages. The City asserts that as a result of the Defendants' allegedly predatory lending practices, these minority borrowers defaulted on their mortgages. The City alleges that

7

the Defendants then foreclosed on the minority borrowers, which caused the property values in the minority borrowers' neighborhoods within the City to decrease. The City alleges that as a result of these diminished property values caused by the Defendants' predatory lending and foreclosures, the City has lost tax revenue and incurred extra costs for crime and fire prevention.

Just as in *Tingley*, a series of speculative inferences must be drawn to connect the injuries asserted with the alleged wrongful conduct by the Defendants. Like in that case, the minority borrowers in this case could have defaulted on their mortgages for a number of reasons, none of which related to the Defendants' alleged "reverse redlining." Also, the Defendants' decisions to foreclose on the properties after the borrowers defaulted could be, as in *Tingley*, for reasons totally apart from the alleged "reverse redlining." Furthermore, it is quite speculative that the depreciation in value of the neighboring homes in the City was caused by the foreclosures of minority borrowers' properties rather than as a result of "a myriad of other factors," which, as the *Tingley* court noted, could include "rising unemployment in the region, changes in the housing market, or other economic conditions." *Tingley*, 2008 WL 1902108, at *5.

This case goes one step farther than the *Tingley* case. The City asserts that it has lost tax revenue and been forced to incur additional costs for crime and fire prevention, because of the number of foreclosed upon homes in the City. The loss of tax revenue from property taxes and the increase in spending, like the depreciation in home values, could have been caused by any number of factors having nothing to do with the Defendants' alleged "reverse redlining."

The court finds that the alleged injuries to the City are too tenuously connected, and so not fairly traceable, to the Defendants' alleged misconduct in this case. As such, the City does not have standing to assert the claims against the Defendants. The court, therefore, will grant the

Defendants' motion to dismiss for lack of standing.

## II. Failure to State a Claim

The Defendants also assert that the City has failed to state any claim upon which relief can be granted. The City asserts that, not only does it have standing, but it has also stated claims under the FHA and under Alabama state law.

Because the court has determined that the City does not having standing to pursue any of these claims against the Defendants, the court need no reach the question whether the City has stated claims upon which relief may be granted.

## CONCLUSION

For the reasons stated above, the court will GRANT the Defendants' motion to dismiss for lack of standing. Because standing is jurisdictional, the court will DISMISS the City's Complaint WITHOUT PREJUDICE.

The court will also *sua sponte* STRIKE pages 31-48 of the City's brief (doc. 14) in opposition to the Defendants' motion to dismiss, because those additional pages exceed the page limit without leave of the court.

The court will enter a separate order to that effect simultaneously.

DATED this 19th day of August, 2009.

*[signature: Karon O. Bowdre]*

KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE